UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| QUINCY BANKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case Number: 2:15-cv-00004 -JHE |
| | ) |
| CAROLYN W. COLVIN, ACTING | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINSTRATION, | ) |
| | ) |
| Defendant. | |

**MEMORANDUM OPINION**[1]

Plaintiff Quincy Banks ("Banks") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI").  Banks timely pursued and exhausted her administrative remedies.  This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).  The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED**, and the action is **REMANDED** to the Commissioner as set forth herein.

## I. Factual and Procedural History

Banks filed her application for a period of disability and DIB on July 22, 2011, alleging she became unable to work beginning December 29, 2010.  (Tr. 148).  Banks filed her application for SSI on July 29, 2011, alleging her disability began on November 10, 2009.  (Tr.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 8).

150).  Banks was a forty-two year old female on December 31, 2014, her date last insured ("DLI").  (Tr. 16).  Banks has at least a high school education and past relevant work as a telemarketer and order clerk.  (Tr. 22, 168-169, 188-194).  The Agency initially denied Banks's application, and Banks requested a hearing where she appeared on May 1, 2013.  (Tr. 29, 73-75).  After the hearing, the Administrative Law Judge ("ALJ") denied Banks's claim on June 22, 2013.  (Tr. 11-24).  Banks sought review by the Appeals Council, but it declined her request on November 7, 2014.  (Tr. 1-3).  On that date, the ALJ's decision became the final decision of the Commissioner.

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a preponderance."  *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI").  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations for statutes or regulations found in quoted court decisions.

ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R.

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Banks last met the insured status requirements of the Social Security Act on December 31, 2014 (her date last insured or "DLI"), and that Banks had not engaged in substantial gainful activity from her alleged onset date of November 10, 2009 through her DLI. (Tr. 16). At Step Two, the ALJ found Banks has the following severe impairments: status post meningioma resection, lumbar spine degenerative disc disease, coronary artery disease status post myocardial infarction, hypertension, obesity, bilateral carpal tunnel syndrome, depression, and generalized anxiety disorder. (*Id.*). At Step Three, the ALJ found Banks did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17).

Before proceeding to Step Four, the ALJ determined Banks's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that, through her DLI, Banks had the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she is precluded from climbing ladders, ropes, or scaffolds. She is also precluded from exposure to the operational control of hazardous moving machinery, unprotected heights and commercial driving. She would be limited to no more than frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling. Bilateral handling and fingering would be limited to no more than frequent. She would be limited to no more than occasional exposure to extreme cold, heat or humidity, as well as irritants such as odors, fumes, dust and gases. She should be limited to the understanding, remembering and carrying out of simple instructions. She should have no more than occasional contact with supervisors, coworkers and the public with no tandem work tasks required. Any changes in the workplace should be occasional and gradually introduced.

(Tr. 19-20).

At Step Four, the ALJ determined, through the date last insured, that Banks is unable to perform any past relevant work. (Tr. 22). At Step Five, the ALJ determined, based on Banks's age, education, work experience, and RFC, that jobs exist in significant numbers in the national economy Banks could perform. (*Id.*). Therefore, the ALJ determined Banks has not been under a disability and denied Banks's claim. (Tr. 23).

## V. Analysis

This Court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)). In contrast to factual findings, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See Martin*, 894 F.2d at 1529 (citing *Gibson v. Heckler*, 779 F.2d 619, 622 (11th Cir. 1986) ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted). In particular, this court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial

evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Banks argues the ALJ's decision to discredit her pain testimony is not consistent with the Eleventh Circuit Pain Standard and not supported by substantial evidence. (Doc. 12 at 4). The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* However, the ALJ may make a credibility determination on the claimant's statements about the intensity and effect of that pain. See *Foote v. Chater*, 67 F.3d 1553, 1561- 62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote*, 67 F.3d at 1561-62. An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence. *Petteway v. Comm'r of Soc. Sec.*, 353 Fed. App'x. 287, 288 (11th Cir. 2009).

The ALJ found that although Banks' "medically determinable impairments could reasonably be expected to cause the alleged symptoms; . . . [her] statements concerning the

intensity, persistence and limiting effects of the symptoms [were] not entirely credible . . . ." (Tr. at 20). Specifically, the ALJ noted several inconsistencies in Banks's allegations he believed cast doubt upon her alleged symptoms. (*Id.*). He explained as follows:

> While [Banks] complains at hearing of daily headaches, chest pain and bilateral carpal tunnel syndrome at hearing, she fails to mention these issues in her function report. (Exhibit 5E). At three different points in a 4 month period, [Banks'] reported sleep patterns change greatly, with her reporting 5 hours of sleep per day in her function report, 10-11 hours of sleep at night and 2-3 during the day at her first consultative examination, and 6-7 hours of sleep at night with no naps at her second consultative examination. (Exhibits 5E, 8F, and 9F). During his examination of [Banks], Dr. Kline noted that, after review of Dr. Storjogann's report a month earlier, [Banks'] complaints and general performance upon examination made him feel as though he saw a completely different individual than who Dr. Storjohann saw. (Exhibit 9F p3).

(Tr. at 20-21).

The ALJ discredited Banks' testimony due to her failure to mention headaches, chest pain, or carpal tunnel in her function report, although her medical records corroborate these diagnoses, and because her reports of sleeping trouble were inconsistent, even though Banks does not argue this is a severe impairment. Although explicit, these minor inconsistencies are inadequate to support the ALJ's finding that Banks' testimony is not credible.

Banks testified at her hearing, "I have severe headaches and there are times that I don't remember things and I repeat myself". (Tr. 40). She stated that, on a one to ten pain level, she rates her headaches at a seven and a half and experiences the headaches every day. (*Id.*). Banks' medical history supports her hearing testimony. Banks was diagnosed with a right posterior fossa meningioma when she was admitted to Brookwood Hospital emergency room in August 2008, after presenting with persistent headaches, nausea, and vomiting. (Tr. 246). The large meningioma with severe mass effect was removed on August 25, 2008. (Tr. 228). One month following her brain tumor removal, Banks reported residual headaches to Dr. Sean O'Malley. (Tr. 221). She repeatedly reported headaches when visiting Brookwood Medical Center between

7

September 2011 and November 2012. (Tr. 339, 422, 435-436, 440). The ALJ noted the presence of "continued headaches" following the meningioma resection in 2008, but failed to attribute appropriate weight to the abundance of medical records corroborating her pain. (Tr. 21). The ALJ abandons the entirety of the record, which supports Banks' complaints of chronic headaches, and relies too heavily on the one inconsistency present in the function report.

Banks also testifies that, as a result of her January 2011 heart attack, she experiences "chest pain maybe once a week". (Tr. 42). Banks' medical history corroborates her hearing testimony. Banks presented to Trinity Medical Center on January 3, 2011, and was subsequently treated with left heart catheterization, selective coronary angiography, left ventriculography, and bare metal stent placement in the mid LAD. (Tr. 309). Dr. Sathyan V. Iyer, a consultative medical examiner, opined that Banks experienced "nonexertional chest pain, which is sharp in nature and lasts for about five minutes" and that "she has [a] Nitroglycerin pill to take" for pain. (Tr. 350). The ALJ awarded Dr. Iyer partial weight as "his findings were largely consistent with the record as a whole". (Tr. 21). The ALJ stated that when determining Banks' credibility, he took into account her failure to mention chest pain in her function report. (Tr. 20). However, Banks *did* state in the function report that she does not handle stress well because her "chest pains start." (Tr. 202).

Finally, when asked about her carpal tunnel syndrome, Banks states with "the numbness of my fingers . . . there are times I can pick up something and it goes straight to the floor." (Tr. 45). Banks further testified that about once a week or four times a month she has difficulty picking things up or buttoning things. This testimony is consistent with Banks' complaints of numbness and pain in her hands throughout the record. In October 2012, Banks reported pain and numbness in the right arm, which had been consistent for about a month. (Tr. 436). Then on

November 8, 2012, Dr. O'Malley noted Banks "had a nerve conduction study which revealed bilateral carpal tunnel syndrome." (Tr. 435). He further stated that "[w]e will place her in carpal tunnel splints for the carpal tunnel. If it does not improve surgery would be the next step." (*Id.*). On January 24, 2013, Dr. O'Malley again noted Banks "still has problems with her hands with carpal tunnel with numbness and pain. She has been wearing her carpal tunnel splints and they have definitely help[ed] but have not resolved the problem entirely." (Tr. 453). The ALJ is correct that Banks fails to mention any of her carpal tunnel symptoms in her function report; however, the record, specifically treatment notes, support her hearing testimony.

Although the ALJ cites the above inconsistencies as reason to find Banks less than credible, Banks' hearing testimony is supported by treatment records. Therefore, the ALJ's decision to discredit her testimony is not supported by the record. Banks's longitudinal medical records are consistent with her hearing testimony, making her credible. *Green v. Comm'r of Soc. Sec.*, 481 F. Supp.2d. 1241 (N.D. Ala. 2007) (where the court held the ALJ's decision was not supported by substantial evidence because treatment records consistently showed the claimant complained of her impairments and received medication for those impairments). Although the ALJ is correct that Banks failed to mention headaches and carpal tunnel symptoms in her function report, an adverse credibility determination must be supported by "explicit and adequate reasons" as well as substantial evidence. *See Holt*, 921 F.2d at 1223. The inconsistences the ALJ points to are not sufficient to discount the entirety of her medical history. On remand, the ALJ should reevaluate Bank's credibility in light of the objective medical evidence supporting her testimony.

## VI. Conclusion

For the reasons set forth herein, Commissioner's decision is **REMANDED** to the

9

Commissioner for further consideration consistent with this opinion. A separate order will be entered.

    DONE this 29th day of September, 2016.

                                           _____
                                           **JOHN H. ENGLAND, III**
                                           UNITED STATES MAGISTRATE JUDGE